## BROWN *et al. v.* BONDS.

125  833
127  389
f127  390

1. Where a petition sets forth a case calling for equitable intervention in order to cancel a deed which is a cloud upon the plaintiff's title, it is within the power of the court, after acquiring jurisdiction over the parties to the controversy and hearing evidence supporting the allegations of the petition, to grant ancillary relief pending the litigation, by enjoining the defendant from proceeding by distress warrant or lien foreclosure to enforce the rights of a landlord, when the plaintiff denies that he has ever attorned to the defendant or recognized him otherwise than as a creditor to whom the deed was made as security for a loan. A temporary injunction may be granted notwithstanding the defendant had, before the bringing of the equitable proceeding, obtained the verdict of a jury in a justice's court on the trial of the issue formed by the filing of a counter-affidavit by the plaintiff to a distress warrant sued out by the defendant; since a verdict, until followed by a judgment entered up thereon, is not conclusive and can not be made the basis of a plea of res adjudicata.

2. When the right of the plaintiff to the equitable relief prayed for depends upon his establishing that a written agreement, setting forth a contract of sale with an option to repurchase, was no more than a mere cloak to conceal an usurious loan, the fact that the plaintiff fails to prove his further contention that a subsequent writing was procured by fraud is of no importance, if such writing in no way really affected the pre-existing legal status of the parties.

### ON MOTION FOR REHEARING.

1. The doctrine of equitable estoppel can not be invoked to prevent an inquiry into an usurious transaction; and a debtor who gives to his creditor a security deed which has the taint of usury may at any time thereafter repudiate the fiction that the relation of landlord and tenant exists between them, without first yielding possession of the premises described in the deed, notwithstanding an agreement to attorn to his creditor as landlord and to pay him rent therefor.

2. On the return of the verdict of a jury in a justice's court, it is the official duty of the presiding magistrate to enter upon his docket judgment, in accordance with the verdict, against the party cast in the suit; and the judgment, when so entered, not the verdict of the jury, furnishes the foundation for a subsequent plea of res adjudicata by the prevailing party.

Argued April 2,—Decided May 18, 1906.

Rehearing denied August 9, 1906.

Injunction. Before Judge Spence. Baker superior court. February 12, 1906.

The petition of Lou Bonds set forth the following allegations: On December 1, 1903, Mrs. C. G. Brown loaned to plaintiff the sum of $406.68, and to secure this loan required plaintiff to make

53

to her a warranty deed to certain lands in Baker county, it being understood and agreed that the deed was given merely for the purpose of securing the debt and interest thereon at the rate of twelve per cent. per annum for ten and one half months. During the year 1904 plaintiff obtained from Mrs. Brown supplies and other advances necessary for her to make a crop, and in the fall began to deliver cotton in payment of the debt. Knowing she owed Mrs. Brown her land debt, in addition to what supplies had been furnished, plaintiff was not particular, nor did she inquire, how the cotton was applied. On October 15, the day on which the debt became due, Mrs. Brown came to plaintiff and told her she wanted plaintiff to sign an instrument of writing by which she could have more time in which to redeem the land, Mrs. Brown at the time agreeing to give her one more year in which to pay the debt. Plaintiff thereupon signed an instrument of writing which Mrs. Brown held out and represented to plaintiff was drawn up in accordance with this understanding. Plaintiff is an ignorant negro woman, without education, and at that time had the greatest confidence in Mrs. Brown; so she signed the paper without knowing its contents. In point of fact the paper which she was beguiled and decoyed into signing by Mrs. Brown purports to be a sale and release of plaintiff's entire interest in the land. It was fraudulently procured, as above recited, was without consideration, and is void because of the indefinite description of the premises which it purports to convey. The land was then worth $1,500, and the plaintiff never had any purpose of conveying it to Mrs. Brown in settlement of a $450 debt. Mrs. Brown has issued a distress warrant against plaintiff for 1,000 pounds of middling lint-cotton alleged to be due by her as rent for the land for the year 1905, and has also foreclosed a landlord's lien for supplies, and has caused a levy to be made on the crops raised on the land by plaintiff. In each of these proceedings the plaintiff has filed her counter-affidavit, denying the justice and fairness of the claims for rent and supplies. These proceedings are now pending in the justice's court of the 957th district of Baker county, and plaintiff is unable to give bond and replevy the property levied on. She does not know exactly what she owes Mrs. Brown, but does know the amount is not more than $450, which amount she has tendered and now stands ready to pay whenever Mrs. Brown shall reconvey or quitclaim to plaintiff the

land held under the security deed.   Mrs. Brown stubbornly refuses
to accept the sum of money tendered to her, and threatens to oust  ·
plaintiff from the premises.   Both of the written instruments
under which Mrs. Brown claims title to the land are void because
made as a part of a usurious contract, and should in equity be can-
celed as a cloud upon plaintiff's title to the land, of which she is
still in possession.   The plaintiff prayed that both of these writings
be canceled; that Mrs. Brown and the levying officer be enjoined
from further proceeding with the distress warrant and the fore-
closure of the landlord's lien, or in any way interfering with plain-
tiff's possession; and that a receiver be appointed to take charge of
the property levied on and then in the hands of the constable.   The
principal defendant, Mrs. Brown, demurred to the petition on vari-
ous grounds, and also filed an answer in which all charges of fraud
were denied and the assertion was made that there was no usury in
the transaction, and the written instruments held by the defendant
spoke the truth thereof.   The evidence introduced on the interlocu-
tory hearing was conflicting as to nearly every material fact at
issue.   There was, however, no dispute as to the fact that, prior
to the filing of the plaintiff's petition, there had been a jury trial
in the justice's court of the proceeding based upon the distress war-
rant sued out by the defendant, Mrs. Brown.   A certified copy of
the record of this proceeding, introduced in her behalf, showed that
the distress warrant was issued on September 12, 1905, and the
counter-affidavit made by Lou Bonds was filed on October 21; that
she therein asserted that she was not indebted to Mrs. Brown in
any sum for rent, and set up the defense that "the said Mrs. Brown,
who claims this rent to be due her, only holds a deed from her
(Lou Bonds), the intention of which was simply to secure debt
and not to prove title, and that she (Lou Bonds) has never yielded
her possession and promised in any manner to pay rent for her own
property;" that upon this distress warrant and counter-affidavit
there was a judgment in favor of Mrs. Brown, rendered by the
justice on November 18; and that on an appeal to a jury in the
magistrate's court a verdict was returned on December 16, 1905, "in
favor of Mrs. Brown for $93.80."   Nevertheless the court below,
after hearing the evidence and the argument of counsel, passed an
order providing that Mrs. Brown be enjoined from in any manner
interfering with the plaintiff's possession, and that she and the

constable be enjoined from further proceeding with the distress warrant and landlord's lien for supplies mentioned in the petition. To this order exception is taken by the defendants.

*Powell & Pottle,* for plaintiffs in error.

*Benton Odom* and *A. S. Johnson,* contra.

EVANS, J. (After stating the facts.) The granting of the injunction was resisted by demurrer to the petition and by answer. Under the facts alleged in the petition, petitioner was entitled to have the writings executed by her to the defendant, Mrs. Brown, surrendered up and canceled. *Bell* v. *Weyman,* 99 *Ga.* 273. The gravamen of the petition is the cancellation of a deed alleged to have been given as security for a debt, after tender of the debt with legal interest and the refusal of the creditor to accept the same; and also the cancellation of a paper termed "release," alleged to have been procured by a fraudulent representation of its contents and without consideration. As defendant in the rent and supply-lien foreclosure suits, petitioner could only set up such equitable defense as would be germane to that which she might allege by way of counter-affidavit; she could not engraft on her statutory defense an amendment praying a cancellation of her deed to the plaintiff. *Patrick* v. *Cobb,* 122 *Ga.* 80. Nor is the case made by the petition at all similar to that of *Johnson* v. *Thrower,* 117 *Ga.* 1009. In that case the petition was filed by one who had attorned to the defendant as landlord, to enjoin the execution of a dispossessory warrant, and no relief other than injunction was prayed. The applicant there was denied an injunction to prevent the enforcement of the dispossessory warrant, because all of the matters alleged were available as a defense to the statutory proceeding. The same may also be said of *Hays* v. *Clay,* 124 *Ga.* 908. In the case in hand, the petition denies the relation of landlord and tenant, and prays the cancellation of certain writings, for good and sufficient reasons alleged, and, as incidental to this relief, prays that the distress warrant and landlord's supply lien be stayed until the final decree, when the respective rights of the parties will have been determined. The petition sets forth good cause for equitable interference by cancelling these writings; and "when the court of equity takes jurisdiction for one purpose, it holds it for all others necessary to the final settlement of all questions involved in the litigation between the parties growing out of and connected with that

subject-matter." *Clay* v. *Banks, 71 Ga.* 374. Necessarily involved in the litigation over the title is the right to collect rent and the demand for supplies by lien foreclosure, as was done in this case. If defendant's title was only security for a debt, she would only be entitled to her debt with legal interest. On the other hand, if defendant purchased the land from the plaintiff, who thereafter remained on the land as tenant, the deed would be absolute, and she would be entitled to proceed with her liens for rent and supplies. As to the nature of the deed made by plaintiff to defendant, whether it was taken as security for a debt, or, together with a cotemporaneous writing, evidenced a sale with option to repurchase, the evidence was in hopeless conflict. The judge took the view of the plaintiff, and we can not say that he abused his discretion.

But it is contended that the result of the litigation in the justice's court concluded the plaintiff. The record of the proceedings in the justice's court discloses that an issue had been formed in that court between the plaintiff and the defendant by the filing of a counter-affidavit to the distress warrant, and on the hearing before the magistrate judgment was rendered against the defendant, Lou Bonds. She took an appeal to a jury in the justice's court and was again unsuccessful. But, so far as the record discloses, no judgment was ever entered on the verdict obtained in that court. Had this been done, the judgment would be conclusive upon the parties as to all issues involved in that controversy, and the further prosecution of the liens would not be enjoined. But a verdict not followed by a judgment will not serve as an estoppel by res adjudicata. *Walden* v. *Walden, 124 Ga.* 145. There being no estoppel by judgment, the court properly considered the enforcement of the liens as in fieri, and enjoined their further prosecution until the equitable petition was disposed of on its merits.

2. Another contention of the plaintiff in error is that the evidence adduced on the hearing did not warrant a finding that she in any way misled Lou Bonds into the belief that the "release" sought to be set aside on the ground of fraud was merely an instrument granting further indulgence. It is true that Lou Bonds, whose testimony was submitted by affidavit, swore only in general terms that she was "an ignorant negro woman, without education," and signed the paper without any knowledge of its contents, relying on Mrs. Brown's false representations as to its character. The paper

purported to have been attested by two witnesses, one of whom, a justice of the peace, testified that at the request of Mrs. Brown he "read over and explained to Lou Bonds the paper dated October 15th, 1904," wherein the plaintiff released all claim to the premises in dispute, and that "no effort was made by Mrs. Brown in his presence to deceive or take advantage of Lou Bonds." This testimony was not met by any denial on the part of the plaintiff that the paper was read over and explained to her by the justice of the peace, and the fact was brought out on the hearing that the plaintiff was at least able to write her own name, though she had testified she was without any education. Under this showing, it is a matter of some doubt whether the plaintiff offered sufficient legal excuse for not knowing the contents of the paper which she sought to cancel on the ground of fraud. But be this as it may, we are of the opinion that it was not essential that she should sustain her allegations of fraud in the procurement of that writing. The original transaction between the parties was evidenced by two writings: (1) a conveyance from Lou Bonds to Mrs. Brown, purporting to be an unconditional deed of bargain and sale with a warranty of title, and (2) an agreement, cotemporaneously executed, which recited the execution of such a deed because Mrs. Brown had "taken up" certain notes and claims which Lou Bonds owed to different parties, aggregating in amount, principal and interest, the sum of $450. The stipulations set forth in this agreement were as follows: "Now should the said Lou Bonds pay the said sum of money and the interest mentioned above on or by October 15th, 1904, then the said Mrs. C. G. Brown shall and will make a quitclaim deed to the above-described property back to the said Lou Bonds. It is further agreed on the part of the said Lou Bonds that in case she fails to pay the money above mentioned on or by the 15th day of October, 1904, she hereby agrees that this contract shall be void and the deed this day made by me to Mrs. C. G. Brown shall become an absolute title to the said Mrs. C. G. Brown." If this instrument, which was signed by both parties, correctly sets forth the agreement between them, then the two writings evidence a sale and conveyance of the land, with an option to the vendor to repurchase it within a designated period. *Felton* v. *Grier,* 109 *Ga.* 320. No mention is made of a loan. However, if a loan was in point of fact made, and these writings merely furnish the cloak for a usurious transaction, then

the truth may be shown by parol and the writings canceled on payment of the debt with legal interest thereon. Ibid. Treating the agreement as speaking the truth, Mrs. Brown became vested with the absolute title upon the expiration of the option, and there was no occasion for her to get any "release" from Lou Bonds. The paper so termed in the pleadings was dated October 15, 1904, was signed by Lou Bonds in the presence of witnesses, and was in the following language: "Georgia, Baker County. For and in consideration of my inability to meet certain claims, mortgages, fi. fas., &c., taken up and paid for me by Mrs. C. G. Brown, and my having given her a deed to my lands in the seventh district of Baker County, Georgia, *to secure her in the payment of these claims,* I hereby transfer Mrs. E. C. Brown my entire claim, without any recourse to be taken by me or my heirs." The instrument does not recite any consideration moving from Mrs. Brown, nor any reason for its execution save the inability of Lou Bonds to meet certain indebtedness which had been discharged by Mrs. Brown. The latter does not, under its terms, relinquish any claim for reimbursement; it does not purport to be an accord and satisfaction, whereby Mrs. Brown was to take the land in payment of any demand against the maker. On its face it purports to be nothing more than a gratuitous relinquishment of an equity of redemption by Lou Bonds respecting lands deeded to Mrs. Brown "to secure her in the payment" of certain claims which Lou Bonds had been unable to meet. This anomalous writing did not, apparently, in any way affect the pre-existing rights of the respective parties to the original agreement, whatever it was, considered as a sale of land with an option to repurchase, or as an ordinary loan, or as a usurious transaction. The paper having no distinctive legal effect changing the status of the parties as fixed by the deed and the agreement cotemporaneously entered into, it is clear that this subsequent writing is not to be regarded as of any importance, save as to its evidentiary value in throwing light upon the question of what was in fact the nature of that agreement. This is equally true whether the paper was voluntarily executed without consideration, or was fraudulently procured by Mrs. Brown in the belief that it would strengthen her claim to the land in dispute. The controlling question in the case is whether or not the parties entered into a usurious agreement, and it was not incumbent on the plaintiff to affirm-

atively show that the instrument styled a "release" was procured by fraudulent representations as to its nature, purpose and effect.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Lumpkin, J., disqualified.*

### ON MOTION FOR REHEARING.

EVANS, J. 1. It is suggested by counsel for the plaintiff in error, that, in passing upon the issues presented for determination in this case, the court must have inadvertently overlooked the fact that the evidence appearing in the record conclusively shows that Lou Bonds entered into a contract of tenancy with Mrs. Brown, and was for that reason estopped, so long as she remained in possession of the premises under that contract, from disputing the title of her landlord. It is unquestionably true that, as a general rule, a tenant, by "entering under the landlord, . . admits his title, and the law will not permit him to assume an inconsistent position, either by attorning to anyone else as his landlord, or by claiming himself title to the premises," even though he may have been in possession under a claim of ownership when the contract of tenancy was made (*Johnson* v. *Thrower,* 117 *Ga.* 1010), and the period during which he contracted to pay rent has expired (*Bullard* v. *Hudson,* 125 *Ga.* 393), since he must first surrender the possession he acquired from his landlord under the contract of tenancy. *Grizzard* v. *Roberts,* 110 *Ga.* 41 and cit. But this doctrine of equitable estoppel is not of universal application. "Tenancy can not arise between debtor and creditor by a contract for rent, if the title on which the so-called tenancy rests is void for usury. In such case there is no estoppel upon the debtor to deny that the creditor is his landlord." *Tribble* v. *Anderson,* 63 *Ga.* 32 (4). "Estoppel is not applied to prevent inquiring into usury. If a deed will not estop, surely a note for rent will not estop, nor will any contract of renting. Out of a title void for usury, and a contract of renting based thereon, no tenancy, no relation of landlord and tenant, will arise. The usury stalks like a pestilence through every form of contract, and poisons all it touches. Tenancy can no more grow out of an usurious title, where both are parts of the same scheme of usury, than a man can become his own tenant and be landlord to himself. There can be no rent, and no right to rent." Id. 56. In the present case the plaintiff below, in her sworn petition and also in an affidavit used as evidence upon the hearing, pre-

sented the theory that she had merely given a security deed, infected with usury, and had subsequently obtained supplies from Mrs. Brown and other advances necessary to make a crop for the year 1904, but never became indebted to her in any other way. In our previous dealings with the case we have regarded this sworn contention on the part of the plaintiff as being in irreconcilable and painful conflict with the sworn contention of the defendant, set forth by way of answer and affidavit, that there was an absolute sale of the land to her, and that subsequently the plaintiff remained in possession under a contract to pay rent, and the supplies and advances were made to her as a tenant, not as a debtor. In support of this contention of the defendant, she produced a writing signed by Lou Bonds and purporting to create a landlord's lien in favor of the defendant for supplies furnished to make a crop for 1904, and also introduced affidavits to the effect that there was an oral contract of renting for the year 1905, and the plaintiff had occupied the premises as a tenant. This evidence was not directly met by any counter-showing or denial that the plaintiff had attorned to the defendant as landlord, but counsel for the plaintiff rested her case upon the statements made in her petition and affidavit that the only relation which had ever existed between her and the defendant was that of debtor and creditor, which relation arose out of a usurious transaction. Even if the presiding judge was, under the evidence submitted upon this particular point, constrained to find that the plaintiff had consented and agreed to attorn and pay rent to the defendant, it would by no means follow that the plaintiff was not entitled to the relief sought, if the court was satisfied that usury had been exacted and the deed relied on by the defendant was given as security for a loan. As has been seen, the bare fact that the plaintiff may have attorned to the defendant would not necessarily estop the former from prosecuting her action, although still in possession of the land. We are still of the opinion that the controlling question in the case was whether or not the parties entered into a usurious agreement, and that the evidence authorized the presiding judge to determine this question in favor of the plaintiff.

2. We also adhere to the view that, no estoppel by judgment being shown, the court properly considered the enforcement of the liens as in fieri. There is not in this case, as in *Webster* v. *Dundee Mortgage Co.*, 93 *Ga.* 278, any reason for regarding a verdict as the

equivalent of a judgment, because the parties, acting under an agreement made after the verdict was taken, so treated it, and lived up to the understanding between them both at the trial in the superior court and on the hearing before this court. The case of *Burns* v. *Lewis*, 86 *Ga.* 591, is cited as authority for the proposition that there are some exceptions to the general rule that a plea of res adjudicata can not be predicated upon a verdict upon which no judgment has been entered. The decision in that case was put upon the peculiar wording of the constitution of 1868 in declaring what should be the effect of a second verdict in a suit for divorce. We can not concur with counsel in the view that the verdict of a jury in a justice's court ought to be given the same evidentiary force, as there "is no statute authorizing a justice to enter judgment upon the verdict of a jury, no fee is prescribed for such service on his part, no provision for reviewing his action should his judgment not follow the verdict." At public expense, a docket must be furnished the justice (Civil Code, §4080), and it is his duty to enter upon that docket "all causes brought before" him, specifying the names of the parties and showing the returns of the officer, and to also make therein "the entry of the judgment, specifying its amount and the day of its rendition." Id. §4082 (6). It is upon this docket, not upon the summons, that the judgment is to be entered. *Ramsey* v. *Cole*, 84 *Ga.* 147. The justice is required by law to return his docket, "when full, together with all the papers connected with the cases therein disposed of, . . to the clerk of the superior court, whose duty it shall be to carefully file away and keep" the same in his office. Civil Code, §4081. In addition to the fee allowed a justice for trying a case without a jury or presiding at the trial of an appeal, he is allowed by law a fee of 35 cents for "entering up judgment in each case." Id. §5403. While his court is not a court of record, provision has been made for the keeping of a docket which will show the net results of all cases tried in his court, and upon him devolves the duty of entering upon that docket all judgments rendered in every case, whether based upon his decision as a trior of the law and the facts or upon the verdict of a jury. It is not contemplated that he shall keep up the entries on his docket only until the stage of appeal to a jury has been reached, and then abandon all efforts to keep a record of what is done in his court while he presides over the trial of a case

before a jury. It is to the entry on his docket of judgment against the losing party, not to any entry on the summons of what purports to be the verdict of a jury, that all must look in determining what was the result of the trial. By such entry the justice declares that a verdict was in fact returned and received such as warranted judgment against the party designated as the one cast in the suit; and if the judgment does not follow the verdict, there is ample provision of law for correcting the error by writ of certiorari. The justice has not, of course, any power to grant a new trial. *Boroughs* v. *White,* 69 *Ga.* 844; *McCook* v. *Moore,* 78 *Ga.* 322. But either party, if dissatisfied with the verdict of the jury, has the right to a writ of certiorari, in order that the judge of the superior court may exercise a wise discretion in granting or refusing a new trial. Civil Code, §4149. The writ of certiorari must be applied for "within thirty days after the final determination of the case in which the error is alleged to have been committed." Id. §4642. When it is sought to review the finding of the jury, the writ must be applied for within that period after the verdict is returned, not within thirty days "from the judgment which the justice may enter thereon." *Western & Atlantic R.* v. *Carson,* 70 *Ga.* 390. This is true for the reason that the judgment may not be entered on the same day the verdict is received, and it is to the finding of the jury that exception is taken, not to the judgment which follows the verdict; the certiorari is merely the equivalent of a motion for a new trial based on the grounds that the verdict is contrary to law and not in accordance with the evidence. It is not essential that the entry of the judgment be put upon the docket upon the same day the verdict is rendered (*Ryals* v. *McArthur,* 92 *Ga.* 378), but such is the better practice, in order that the docket may disclose the information it is intended to furnish to all concerned and afford evidence which is available as proof of the outcome of the trial. The decision in *W. & A. R.* v. *Carson,* supra, does not remotely suggest the idea that the verdict of a jury in a justice's court is to be treated as a final judgment, because the justice has no power to override it, but, on the contrary, this court in that case gave recognition to the practice of entering up judgment on the verdict which was pursued by the justice. Much uncertainty and confusion would result if the jury's finding were left in the air or entered on the

papers in the case merely, which are subject to loss and destruction and may be tampered with, instead of being proclaimed by a judgment of the court entered upon the docket, to which the public may readily refer. In thus entering up judgment, we think the magistrate performs one of those duties contemplated by law (Civil Code, §4082) "which necessarily appertain" to his office. The verdict of a jury in a justice's court has no more finality than one returned by a jury in the superior court. The procedure provided for setting it aside is different; that is all.

---

### NOTE.

The absences of Justices, hereinbefore noted, were due to providential causes.

A few cases where Justice Atkinson did not preside were argued before he came upon the bench of this court.