# MACKELPRANG v. WALKER.

No. 4713. Decided April 20, 1929. (277 P. 401.)

*George B. Hancock,* of Huntington Park, Cal., for appellant.

*Reuben J. Shay,* of Cedar City, for respondent.

ELIAS HANSEN, J.

Delroy Mackelprang applied to the district court of Iron county, Utah, for a writ of habeas corpus to obtain his release from the custody of W. G. Walker, the marshal of

Cedar City, Iron county, Utah. The application was dismissed. This appeal is prosecuted from the judgment denying applicant's discharge.

Mackelprang claims the right to be discharged from the custody of the marshal upon this state of facts:

On September 27, 1927, a verified complaint was filed in the justice court of Cedar City, Iron county, Utah, charging Delroy Mackelprang with the unlawful possession of one pint of moonshine whisky. Upon being arraigned, Mackelprang entered a plea of guilty. He waived time for passing sentence, whereupon the justice of the peace pronounced sentence to the effect that Mackelprang pay a fine of $75 or serve 75 days in the city jail.

The justice of the peace testified that: "He (Mackelprang) paid $25 and gave a bond for the other $50, to be paid in 30 days." The bond referred to by the justice of the peace provides that the sureties "do hereby undertake and promise that the above-named Delroy Mackelprang, defendant, will appear and pay above sum of $75, or, if he fail to perform the conditions, we will pay to Cedar City in lawful money of the United States the sum of $75." The bond was executed by two sureties and delivered to the justice of the peace.

Neither Mackelprang nor his sureties paid the ramaining $50 of the fine. The justice of the peace did not enter the sentence in his docket or elsewhere. He did, however, make the following notation on a copy of the complaint: "Plead guilty. Fined $75.00 or 75 days in jail. Pd. $25.00." No further proceedings appear to have been had in the case of Cedar City v. Delroy Mackelprang until about March 8, 1928. In the meantime Mackelprang continued to reside with his family at Cedar City, Utah. Between September 27, 1927, and March 8, 1928, he was absent from Cedar City about a week.

It is made to appear that on March 8, 1928, the marshal of Cedar City held Mackelprang in custody upon a commitment issued by the justice of the peace of Cedar City, Utah,

in the case of *Cedar City* v. *Delroy Mackelprang*. It also appears that on that date, March 8, 1928, the district court of Iron county ordered Mackelprang released. The first order directing the discharge of Mackelprang appears to have been based upon the fact that no written judgment or sentence was entered in the docket of the justice of the peace of Cedar City until after the marshal was ordered to release Mackelprang. As soon as the marshal was directed to release Mackelprang, the justice of the peace of Cedar City made the following written entry in his docket in the case of *Cedar City* v. *Delroy Mackelprang*:

"Sept. 27, 1927. Defendant brought into court. Complaint read to defendant and having been duly advised of all legal rights he entered a plea of guilty. The defendant duly waived time for passing the sentence and consented that sentence be passed upon him at that time. Whereupon the defendant was sentenced to pay a fine of $75.00 or serve 75 days in the city jail. $25.00 of said fine was paid. The court granted a stay of execution for ten days upon the defendant furnishing a bond signed by two good and sufficient sureties. Alex H. Rollo, Justice of the Peace."

As soon as the entry was so made in the docket, the justice of the peace issued a commitment in words and figures following (omitting title of court and cause):

"The State of Utah to the Marshal of Cedar City, Iron County, Utah—Greetings:

"Whereas, on the 27th day of September, A. D. 1927, one Delroy Mackelprang was brought before me, Alex H. Rollo, a justice of the peace in and for Cedar City, Iron county, and state of Utah, charged with having in his possession unlawfully one pint of moonshine whisky within the limits of said Cedar City on the 27th day of September, A. D. 1927, contrary to the revised ordinances of Cedar City; and

"Whereas, the said defendant was adjudged guilty of said offense and sentenced to pay $75 or be imprisoned in the city jail for a term of 75 days; and

"Whereas, only $25 of said fine has been paid:

"Now, therefore, you are hereby forthwith commanded to take into your custody the said Delroy Mackelprang and safely keep him until he shall pay the said sum of $50 or secure the same to

be paid as provided by law, not exceeding one day in the city jail for each dollar of fine.

"In witness whereof I have hereunto set my hand this 8th day of March, A. D. 1928.

"Alex H. Rollo,
"Justice of the Peace."

In this proceeding it is by virtue of the foregoing commitment that the marshal of Cedar City seeks to justify his custody of Mackelprang.

There is a conflict in the adjudicated cases as to the effect of a failure to timely enforce a sentence of imprisonment against one who has been convicted of a crime. If the delay in enforcing a sentence of imprisonment is caused by the pending of a motion in arrest of judgment, a motion for a new trial, in pursuance of a suspended sentence as provided for by Laws Utah 1923, p. 144, c. 74, upon appeal or for other cause necessary to give a defendant ample time and opportunity to avail himself of every safeguard guaranteed him by law, there can be no serious doubt but that a delay in the enforcement of the sentence for any such purpose does not deprive the court of jurisdiction to enforce its judgment. In some jurisdictions it is in effect held that, in the absence of death or the pardon of a defendant, a sentence of imprisonment is satisfied only by the actual suffering of the imprisonment. The following cases support, or tend to support, such view: *State* v. *Drew*, 75 N. H. 402, 74 A. 875; *Morgan* v. *Adams*, 226 F. 719, 720, 141 C. C. A. 475; *State* v. *Abbott*, 87 S. C. 466, 70 S. E. 6, 8, 33 L. R. A. (N. S.) 112, Ann. Cas. 1912B, 1189; *Norman* v. *Rehberg*, 12 Ga. App. 698, 78 S. E. 256; *Ex parte Lujan*, 18 N. M. 310, 137 P. 587; *Fuller* v. *State*, 100 Miss. 811, 57 So. 806, 39 L. R. A. (N. S.) 242, Ann. Cas. 1914A, 98; *In re Collins*, 8 Cal. App. 367, 97 P. 188; *Friske* v. *Circuit Court*, 51 S. D. 415, 214 N. W. 812; *Egbert* v. *Tauer*, 191 Ind. 547, 132 N. E. 370, 134 N. E. 199; *Tanner* v. *Wiggins*, 54 Fla. 203, 45 So. 459, 14 Ann. Cas. 718; *Daniel* v. *Persons*, 137 Ga. 826, 74 S. E. 260; *Miller* v. *Evans*, 115 Iowa, 101,

88 N. W. 196, 56 L. R. A. 101, 91 Am. St. Rep. 143; *Brabandt* v. *Commonwealth*, 157 Ky. 130, 162 S. W. 786; *Re Hinson*, 156 N. C. 250, 72 S. E. 310, 36 L. R. A. (N. S.) 352; *Spencer* v. *State*, 125 Tenn. 64, 140 S. W. 597, 38 L. R. A. (N. S.) 680.

In other jurisdictions it is held that, if the defendant is permitted to go indefinitely on his own recognizance after sentence is imposed, or if enforcement of the sentence is unreasonably delayed, the court loses jurisdiction to enforce the imprisonment. *Ex parte Clendenning*, 22 Okl. 108, 97 P. 650, 19 L. R. A. (N. S.) 1041, 132 Am. St. Rep. 628; *People* v. *Barrett*, 202 Ill. 287, 67 N. E. 23, 63 L. R. A. 82, 95 Am. St. Rep. 230; *Weaver* v. *People*, 33 Mich. 296; *United States* v. *Wilson* (C. C.) 46 F. 748; *Ex parte Peterson*, 19 Idaho 433, 113 P. 729, 33 L. R. A. (N. S.) 1067; *In re Markuson*, 5 N. D. 180, 64 N. W. 939; *In re Strickler*, 51 Kan. 700, 33 P. 620; *Posvar* v. *McPherson*, 36 Wyo. 159, 253 P. 667; *In re Flint*, 25 Utah 338, 71 P. 531, 95 Am. St. Rep. 853; *Scottsboro* v. *Johnston*, 121 Ala. 397, 25 So. 809; *Grundel* v. *State*, 33 Colo. 191, 79 P. 1022, 108 Am. St. Rep. 75; *Tuttle* v. *Lang*, 100 Me. 123, 60 A. 892; *State* v. *Clifford*, 84 N. J. Law, 595, 87 A. 97; *Scott* v. *Chichester*, 107 Va. 933, 60 S. E. 95, 16 L. R. A. (N. S.) 304; *In re Webb*, 89 Wis. 354, 62 N. W. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846. Other cases dealing with the effect of a delay in the enforcement of sentence of imprisonment are referred to in some of the foregoing citations, but the cases above cited will serve to illustrate the divergent views of judicial opinion.

The case of *Reese* v. *Olsen*, 44 Utah 318, 139 P. 941, was cited in the court below in support of the contention that Mackelprang was lawfully held in custody by the marshal of Cedar City. So far as appears from the opinion in that case, the question of a delay in enforcing the imprisonment imposed upon Reese was not involved. Reese was sentenced on March 10, 1914. The opinion was rendered April 4, 1914, at which time Reese had served about 20

days. Reese, therefore, must have been committed within a few days after sentence was passed.

The law announced in the Flint Case, supra, is applicable to the facts in this proceeding. In that case Richard Flint was convicted of the crime of forgery on February 25, 1902. Time for sentence was set for March 5, 1902, and then continued to March 12, 1902. Flint appeared for sentence on the last-mentioned date, at which time the court ordered that sentence be suspended and defendant permitted to go on his own recognizance. On December 5, 1902, the judge before whom the defendant was tried and convicted made and entered an order directing that Flint appear before the court for sentence on Monday, January 5, 1903. On that day time for sentence was continued to January 12, 1903. The defendant appeared on January 12, 1903, and "objected to any further proceedings in the premises on the ground that the court had no jurisdiction of the person of the defendant." The objection was overruled, and the defendant sentenced to serve a term of one year in the state prison. He was committed to the proper officer, with directions that the sentence be enforced. Flint applied to this court for a writ of habeas corpus. It was held that Flint was illegally restrained of his liberty and he was ordered discharged. In the course of the opinion this court said:

"When the court suspended judgment indefinitely, and ordered the defendant discharged from custody, it no longer had jurisdiction over him, and all subsequent proceedings in the premises were unauthorized by law, and are therefore void."

In the proceedings had before the justice of the peace of Cedar City, Mackelprang was discharged from custody when he paid $25 of the fine imposed upon him and furnished a bond for the payment of the remaining $50. There is nothing in the records of the justice of the peace of Cedar City which indicates that the justice's court retained jurisdiction over the person of Mackelprang after the $25 was paid and the bond executed and delivered. The bond con-

tains no provision for the future appearance of Mackelprang, except to pay the remainder of the fine. The justice of the peace who sentenced Mackelprang testified at length in the court below concerning the proceedings had before him in the case of *Cedar City* v. *Delroy Mackelprang.* So far as appears from his testimony, the discharge of Mackelprang was unconditional, except as to the fine. According to the justice's testimony the bond was given to secure the payment of the remaining $50 of the fine within 30 days and for no other purpose. The justice of the peace, having elected to accept security for the payment of the remainder of the fine, may not retain the security so given and at the same time direct that Mackelprang be imprisoned. In this case, as in the Flint Case, supra, the defendant was discharged from custody without any order indicating that such defendant would be required to surrender himself for execution of any judgment of imprisonment.

In the case of *Rasmussen* v. *Zundel,* 67 Utah 456, 248 P. 135, a sentence similar to the one imposed upon Mackelprang was under review by this court. In that case it appears that Rasmussen had been convicted in the city court of Brigham City, Utah, of the offense of killing a deer out of season. The statute under which he was convicted provided that "any person or persons violating any of the provisions of this section shall be deemed guilty of a misdemeanor and if it be a violation of any provision of this section pertaining to elk, deer, antelope, mountain sheep and mountain goat, upon conviction thereof shall be fined in a sum not less than $200.00 or imprisoned not less than ninety days." Upon conviction, the city court entered its judgment, according to the stipulation of facts filed in the district court, that Rasmussen "was then and there sentenced by the court to either pay a fine of $200 or spend 90 days in the county jail." Rasmussen failed to pay the fine and was therefore "remanded to the custody of the sheriff of Box Elder county to serve the 90 day jail sentence." Rasmussen applied to the district court of Box

Elder county for a writ of habeas corpus, claiming that he was unlawfully restrained of his liberty by the sheriff of Box Elder county. A hearing was had in the district court. Rasmussen was denied a discharge from custody. Upon an appeal to this court, he was ordered discharged. In the course of the opinion, written by Mr. Chief Justice Gideon, it is said:

"The stipulation is that defendant was either to pay a fine of $200 or spend 90 days in jail. In other words, the court apparently left it to the defendant or to the sheriff to determine which sentence should be imposed. It is elementary that judgment, especially in criminal cases, should be definite, and ministerial officers should not be left in doubt as to what sentence is to be imposed. It is not necessary to cite authority to support that proposition. The judgment in this case was not in the alternative—that upon failure to pay a fine the appellant should be imprisoned at hard labor until such fine has been paid—as the court was authorized to impose by section 9450, Comp. Laws Utah 1917."

The same uncertainty that existed in the sentence imposed upon Rasmussen in the foregoing case exists in the sentence of Mackelprang. The ordinance of Cedar City which Mackelprang violated is not before us, and therefore we are not advised whether such ordinance provides for the payment of a fine or for imprisonment or both. But, whatever be the provisions of the ordinance, such provisions cannot make certain the sentence imposed upon Mackelprang.

It will be observed that the commitment under which Mackelprang was being held by the marshal of Cedar City is uncertain as to the length of time that Mackelprang was to be imprisoned, in the event that the remainder of the fine was not paid. The commitment provides that Mackelprang shall be held until he pays or secures the payment of $50, but the imprisonment shall not exceed "one day in the city jail for each dollar of fine," Whether the word "fine" refers to the unpaid part of the fine or the whole fine is not clear. Neither is the language clear as to the

minimum time that Mackelprang shall serve in the city jail in the event the remainder of the fine is not paid.

There are a number of other irregularities urged, but in view of the conclusions we have reached it is not necessary to discuss other phases of the case, and hence we express no opinion as to the sufficiency of the commitment under which Mackelprang was held, or the other irregularities urged by the appellant.

We are of the opinion that the issuance of the second commitment in the case of *Cedar City* v. *Delroy Mackelprang* and all proceedings had thereunder were unauthorized by law and hence void. He is entitled to a discharge.

Such is the order.

EPHRAIM HANSON, J., concurs.

STRAUP, J. (concurring). I concur in the views expressed and the result reached in the prevailing opinion.

The salient facts, as I view them, are that the appellant, before a justice of the peace September 27, 1927, pleaded guilty to a charge of unlawfully having intoxicating liquor in his possession. Just what judgment was rendered or sentence pronounced on the plea is not of record, except as shown by a nunc pro tunc entry made in the justice's docket, as presently indicated, more than five months after the plea. It, however, is said the justice, in the habeas corpus proceeding, testified that he, when the plea was made, orally pronounced a sentence that the accused pay a fine of $75 or serve 75 days in the city jail. But no record entry or memorial or memorandum was made of it, other than an indorsement by the justice on a copy of the complaint: "Plead guilty. Fined $75.00 or 75 days in jail. Pd. $25.00."

The record further shows that at that time a bond or undertaking, with two good and sufficient sureties, was given and accepted by the justice, by the terms of which the sureties promised to pay the remaining fine of $50 within 30 days, if the accused failed to pay it, and, if the

accused was not then in fact discharged from custody, he was permitted to go hence without delay. There the matter rested until more than five months thereafter, when the justice issued a commitment upon which the accused was arrested by the city marshal and held in custody. At such time it was made to appear that the balance of the fine was not paid, but it was not made to appear that any notice was given the sureties that the accused had not paid it, or that any request was made of the sureties to pay it.

On a petition filed by the accused, on allegations of an unlawful detention and restraint, the district court issued a writ of habeas corpus. On the hearing thereof it was held that the accused was unlawfully detained and restrained, and hence was discharged without day. It is not clearly made to appear the grounds or reasons for the unconditional discharge, except, as urged, that the ruling was largely based on the ground that the justice had not rendered or entered a judgment in the cause upon which a commitment could lawfully issue. Up to that time there was no entry or memorial of the rendition or entry of any judgment. After the accused was unconditionally discharged by the district court, and on the same day, March 8, 1928, the justice, without notice, motion, or consent, sua sponte, made this entry in his docket:

"Sept. 27, 1927. Defendant brought into court. Complaint read to defendant and having been duly advised of all legal rights he entered a plea of guilty. The defendant duly waived time for passing the sentence and consented that sentence be passed upon him at that time. Whereupon the defendant was sentenced to pay a fine of $75.00 or serve 75 days in the city jail. $25.00 of said fine was paid. The court granted a stay of execution for ten days upon the defendant furnishing a bond signed by two good and sufficient sureties."

The entry on its face appears to have been made "September 27, 1927," though admittedly and indisputably it was not made until March 8, 1928, more than five months thereafter, and after the accused was discharged on the

habeas corpus proceeding. The justice thereupon issued another commitment, upon which the accused was again arrested and held in custody by the city marshal. The accused again applied for and was granted a writ of habeas corpus. On that hearing the district court refused to discharge him. The reason for such refusal is said to be that the second commitment was issued on a proper and valid judgment, and hence the accused was not unlawfully held or restrained of his liberty.

Comp. Laws Utah 1917, § 9422, of the Criminal Code of Procedure of Justices' Courts, provides that "a docket must be kept by the justice of the peace, in which must be entered each action, and the proceedings of the court therein." By section 9449 the justice, on a plea of guilty, or on a verdict of guilty, is required to appoint a time for rendering judgment, which, unless waived, must not be more than two days nor less than six hours after the plea or verdict. It is the general rule and the weight of judicial authority that a justice's judgment, rendered at an unauthorized time or place, is generally held to be void, unless the parties have consented that it be so rendered. 35 C. J. 672. In 16 R. C. L. 385, it is stated that by the great weight of authority a statute of such nature is mandatory, and where a justice of the peace fails to observe it and renders a judgment at a later date, the judgment is invalid. Both authors, however, state that there are cases to the contrary, but that such holdings are not the weight of authority.

As to that, I am, however, to some extent precluded by the case of *Kolb* v. *Peterson*, 50 Utah 450, 168 P. 97, where it was held that a judgment entered by a justice of the peace six days after sentence was pronounced or rendered was not invalid; the court, however, observing that the judgment ought to have been entered as soon as practicable after sentence was pronounced. Because the holding seems to be against the weight of authority, and because the cases in the main cited to support the ruling do not support it, the cited authorities, 15 R. C. L. 578, and 23 Cyc. 838, 839,

relating to courts of record and of general jurisdiction and courts of terms, which a justice court in our jurisdiction is not, *Coleman* v. *Roberts*, 113 Ala. 323, 21 So. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111, relating to a different situation, and *Holmes* v. *Pennsylvania* R. Co., 74 N. J. Law, 469, 66 A. 412, 12 Ann. Cas. 1031, which does not relate even to the subject, I think the holding should be strictly confined to the particular facts of the case before the court, and in no sense extended by implication. I thus accept the holding that a judgment should be entered as soon as practicable after sentence is pronounced or judgment rendered, and that a judgment entered six days thereafter is not for that reason ipso facto invalid. But I am not willing, neither am I required, to carry the holding any further.

Technically, I recognize a distinction between the rendition of a judgment and the entry of it, and that ordinarily the one is a judicial and the other a ministerial act. But in a case tried to a court, or to a justice of the peace, there must be some proper and legal memorial of the rendition of a judgment, entry in the minutes of the court, or by some memorandum or document filed in the cause, or by some other memorial. Where no judgment has been entered, and where there are no minutes of the court or other memorials made or filed with the papers in the cause to show the kind of judgment rendered, the evidence of the rendition of it cannot be carried merely in the breast of the court, nor made to depend upon his memory, which as occasions may arise may become slippery or biased. When a judgment is authoritatively and properly entered, it itself becomes the memorial, and ordinarily the uncontestable evidence of it. But, in the absence of a statute to the contrary, in a case tried to a court or to a justice of the peace, the general rule is that for most purposes an entry or record of the judgment is necessary to its completion. *Gunn* v. *Plant*, 94 U. S. 664, 24 L. Ed. 304. And in *Thompson* v. *Superior Court*, 161 Cal. 329, 119 P. 98, it is held that in a justice court the judgment is not rendered until it is entered, and that there

is no other way to render a judgment in such a court, as the only memorial which the justice is required to keep is his docket.

While the statute there was somewhat different from our statute, yet the principle in hand is no different. However, I need not go that far. I need but go to the extent that there must be some memorial of the rendition of the judgment other than the mere memory of the justice. The memorandum made by the justice on the copy of the complaint does not suffice for such purpose. It is a familiar maxim that what ought to be of record must be shown by record, and by the right record. The record which the justice is required to keep is his docket, and, as the authorities say, that ordinarily is his only legal and authoritative memorial, and therein must be entered all of the proceedings of the court in the cause. *Brown* v. *Bonds*, 125 Ga. 833, 54 S. E. 933. It is the judgment record which is intended to afford the interested parties official notice of all orders made and proceedings had in the cause and the existence of judgments, and to enable them to take such further steps in the case as may be necessary or desired. To permit a justice five months after the claim of a rendition of a judgment viva voce, without a docket, without a minute entry, without a memorial, and without a record of any kind, to assert the kind of judgment orally rendered in a case, is bound to lead to controversies and uncertainties. As well call the bailiff or other attendants in babbling tongues to dispute him.

Assuming, as in effect was held in *Kolb* v. *Peterson,* supra, that a judgment, to be valid, need not be entered within two days after plea or verdict, but may be entered as soon as practicable after sentence, and that it may be done six days thereafter, how stands the case? The courts holding that a judgment is not invalid, though not entered within the prescribed statutory time, if made as soon as practicable and without unnecessary delay, nevertheless in effect hold that it must be entered as nearly contempo-

raneous with the fact or proceeding recorded as practical. In *Coleman* v. *Roberts,* 113, Ala. 323, 21 So. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111, it was held that an entry of a judgment of contempt committed in the presence of the justice in the course of a trial was not required to be entered ,before the court adjourned the proceedings of the trial for the day. In *Mundy* v. *Kern,* 74 Wash. 477, 133 P. 1035, a delay of ten days was held not unreasonable. In *Cross* v. *Gall,* 65 W. Va. 276, 64 S. E. 533, where a judgment was entered within a few days after its rendition, it was held to be entered within a reasonable time. So in *Hickey* v. *Hinsdale,* 8 Mich. 273, 77 Am. Dec. 450, and *Saunders* v. *Tioga Mfg. Co.,* 27 Mich. 520, where it was entered within two or three days, and in *Davis* v. *Simma,* 14 Iowa, 154, 81 Am. Dec. 462, and in *Knox* v. *Nocoli,* 97 Iowa, 687, 66 N. W. 876, where the judgment was entered the next morning. But in *Warrall* v. *Chase & Co.,* 144 Iowa, 665, 123 N. W. 338, where the judgment was not entered until three days, it was held invalid. And in *Tomlinson* v. *Litze,* 82 Iowa, 32, 47 N. W. 1015, 31 Am. St. Rep. 458, it was held that a judgment entered more than ninety days was void.

But what shall be said of the proceeding here, where no judgment was entered and no memorial of the rendition of any judgment made or entered until more than five months after plea, and where it is quite apparent that, when it was entered, it was not entered to conform with what was in fact done, but to overcome the ruling of the district court discharging the accused on the first habeas corpus hearing. The docket entry admittedly made by him March 8, 1928, is both a rendition and entry of a judgment. In courts of record and of general jurisdiction it is common practice in term time, or even after term, to order entries of judgments nunc pro tunc. But usually such orders are made on notice and motion, especially if made after term time. Certainly a justice of the peace, on a delay of more than five months, ought not to be permitted to make a nunc pro

tunc entry of the rendition and entry of a judgment without motion or notice or consent. If no judgment was rendered by him before the entry was made, he certainly had no right to render one more than five months after plea, unless upon postponement or with the consent of the parties. Whatever judgment was rendered by him contemporaneously with the plea, or within two days thereafter could not be changed or interfered with, or new conditions imposed, without the consent of the accused. 35 C. J. 677.

So far as made to appear, the only sentence pronounced or judgment rendered contemporaneously with the plea was that the accused pay a fine of $75 or serve 75 days in the city jail, and that, as has been seen, rests upon no memorial, but merely on the memory of the justice. The memorandum indorsed by him on the copy of the complaint imports no more. The undertaking which was filed and accepted by the justice implies no more. The undertaking was an unconditional promise to pay the balance of the fine within 30 days, if it was not paid by the accused. There is nothing to show that an order was made staying execution of the judgment. The first we have of that is in the nunc pro tunc entry in the docket, wherein it is recited that "the court granted a stay of execution for ten days upon the defendant furnishing a bond signed by two good and sufficient sureties."

The undertaking by its terms is not a stay bond, not an undertaking that the accused at the end of any stay surrender himself up, and upon his failure so to do, or otherwise to hold himself amenable to the process of the court, the sureties would pay to the state or to the municipality a fixed and stipulated sum of money. To the contrary, the undertaking was in the nature of a guaranty, and a direct promise to pay the balance of the fine upon the accused's failure to pay it, not within 10 days, but within 30 days. The justice could not make the meaning or purpose of the undertaking different from what its terms purport by, 5 months after it was given, writing something nunc pro

tunc in the record without notice, motion, or consent. Whatever indulgence should be granted justices of the peace, and though formalities of their record be liberally viewed, still I cannot sanction such a nunc pro tunc practice, nor can I call what was done mere error.

As has been seen, the justice by statute is required to keep a docket, which ordinarily is the only memorial of his proceedings, and all that usually is required to be kept by him, and in which must be entered the proceedings of the court in an action, which, among other things, requires an entry of the judgment rendered and the time of rendering it. 15 R. C. L. 590; 16 R. C. L. 380. While the strictness required in keeping a docket of a district or superior court need not be observed by a justice of the peace as to proceedings in a cause before him, yet the substance of what he is required to enter may not be dispensed with. And though, as held by some of the authorities, the entries of such proceedings need not be made within the statutory time, yet most of the authorities are to the effect that the entries nevertheless are required to be made as nearly contemporaneously with the acts and the proceedings recorded as is practicable, and as may conveniently be done, and, when not so done, there is no authentic legal memorial of the proceeding, or of the rendition or entry of a judgment, and that one may not more than 5 months thereafter be supplied by a nunc pro tunc entry without notice, motion, or consent.

I therefore am of the opinion that there was no legal authority for the issuance of the commitment, and that the accused held thereunder was unlawfully detained and restrained of his liberty. It is not now a question to what extent the accused was prejudiced thereby. If there was no such proper and legal memorial of the rendition and entry of the judgment as to authorize the issuance of the commitment, the accused to obtain his discharge was not required to show to what extent he was prejudiced by his arrest and detention. It is enough when it was made to

appear that his arrest and detention were without authority and unlawful. Nor may it be said that, since the accused pleaded guilty to the charged offense, any kind of a proceeding had thereafter was good enough for him, or that before he may complain he is required to show that he cannot pay the balance of the fine, or go to jail, as well as he could have done when he pleaded guilty.

CHERRY, J. I dissent. It appears by undisputed evidence that the judgment entered by the justice on his docket was the identical judgment actually pronounced upon the plea of guilty. The delay in making the entry on the docket in no way prejudiced the prisoner and did not invalidate the judgment. 16 C. J. 358; *Ex parte Dye,* 32 Mont. 132, 79 P. 689; *State* v. *Parise,* 117 Kan. 106, 230 P. 304; *Ex parte Glavich,* 74 Cal. App. 144, 239 P. 707.

The justice's docket shows that "the court granted a stay of execution for ten days upon the defendant furnishing a bond signed by two good and sufficient sureties," and the bond itself recites that the defendant, "having been duly sentenced upon said complaint, and granted a stay of execution for ten days from the date hereof, is bonded in the sum of $75.00," and that the sureties undertake and promise that the defendant "will appear and pay the above mentioned sum of $75.00," etc. The record shows no order of discharge or release of the judgment or substitution of the bond therefor—nothing but a stay of 10 days on condition of furnishing a bond. The oral testimony of the justice that "he paid $25 and gave a bond for the other $50 to be paid in 30 days" cannot change the terms and purpose and legal effect of the bond, which was introduced in evidence and speaks for itself.

The principle decided in *In re Flint,* 25 Utah 338, 71 P. 531, that "the court, by indefinitely suspending sentence, and permitting defendant to go on his own recognizance, loses jurisdiction of him, so that it cannot afterwards have him rearrested, and sentence him," has no application here. In the present case there was no suspension of sentence at

all. Defendant was not kept in a state of suspense or uncertainty for an indefinite time. Sentence was pronounced on the same day the plea of guilty was entered, and a stay of execution for 10 days was granted upon condition that a bond be given. Ample authorities are quoted in the prevailing opinion to the effect that such a stay does not deprive the court of jurisdiction to enforce its judgment, even in cases where the judgment is for unqualified imprisonment, which this is not.

The judgment that the defendant pay a fine of $75 or serve 75 days in the city jail is not void for uncertainty. I think a judgment in those words is popularly understood to mean that the imprisonment is contingent upon nonpayment of the fine. Other courts have so interpreted similiar judgments, and upheld them as against attack by habeas corpus. *Ex parte Riley,* 142 Cal. 124, 75 P. 665; *Ex parte Robbins,* 27 Cal. App. 677, 151 P. 14; *Ex parte Glavich,* 196 Cal. 723, 239 P. 708.

Our own case of *Rasmussen* v. *Zundel,* 67 Utah 456, 248 P. 135, dealt with a different situation, and is distinguishable from the present case. There the penalty for the statute violated was a fine not less than $200 or imprisonment not less than 90 days. The judgment held bad for uncertainty was that the defendant "either pay a fine of $200 or spend 90 days in the county jail." The court said:

"The judgment in this case was not in the alternative—that upon failure to pay the fine the appellant should be imprisoned at hard labor until such fine had been paid—as the court was authorized to impose by section 9450, Comp. Laws Utah 1917."

Section 9450, supra, prescribes that a judgment for a fine, or of a fine and costs, may also direct that defendant be imprisoned at hard labor until such fine, or such fine and costs, are paid, in the proportion of one day's imprisonment for every dollar of the fine and costs.

In the *Rasmussen* v. *Zundel* Case it was plain that the court did not intend to impose 90 days imprisonment as

alternative upon the nonpayment of a $200 fine under section 9450, supra, because the proportion between the two was not the proportion authorized by the statute. In the present case, the relative amount of fine and term of imprisonment are such as to indicate the intention to impose imprisonment only to enforce payment of the fine in the proportion of one day's imprisonment for each dollar of the fine, and this view is confirmed by the commitment, which expressly orders the defendant imprisoned until he shall pay the fine not exceeding one day for each dollar of the fine.

"The courts will go to all reasonable lengths to support the judgments of inferior courts not of record" which do not conform to prescribed forms "when assailed on habeas corpus." *Ex parte Adams,* 170 Ala. 105, 54 So. 501; Church on Habeas Corpus, § 296.

Our own Criminal Code (Comp. Laws Utah 1917, § 9365) provides:

"Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding nor any error or mistake therein shall render it invalid unless it shall have actually resulted in a miscarriage of justice."

The prisoner has not been prejudiced or harmed by any of the proceedings for which he now complains. The delay in entering the judgment on the justice's docket did not affect him at all. He knew what the judgment was when it was pronounced. He recognized it by paying a part of it, and recited the same correctly in his bond. The stay of execution was an act of leniency towards him, and as a matter of course granted upon his own application. Whatever uncertainty existed in the judgment was resolved in his favor; that is, the judgment at all times was interpreted as for a fine, with alternative imprisonment imposed in case the fine was not paid.

I think that sound legal principles, confirmed in judicial decisions, support the judgment and commitment under

which the prisoner is held, and that the judgment of the district court should be affirmed, and the prisoner remanded to the custody of the city marshal, and required to pay the penalty for his admitted wrong.

FOLLAND, J. I concur in the views expressed by Mr. Chief Justice CHERRY.